IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Jackson January 6, 2015

## NAZARIO ARAGUZ v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009-B-1141      Steve R. Dozier, Judge**

———————————

### No. M2014-01131-CCA-R3-PC – Filed February 24, 2015

———————————

Petitioner, Nazario Araguz, was convicted by a jury of conspiracy to deliver 300 grams or more of cocaine in a drug-free school zone and possession with intent to deliver 300 grams or more of cocaine in a drug-free school zone. He received concurrent seventeen-year sentences. Petitioner filed a petition for post-conviction relief alleging that he received ineffective assistance of counsel. After a hearing, the post-conviction court denied relief. On appeal, petitioner argues that he received ineffective assistance of counsel because trial counsel did not properly advise him regarding his right to testify. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Elaine Hurd, Nashville, Tennessee, for the appellant, Nazario Araguz.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and John C. Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### I. Facts

This case stems from a controlled cocaine buy. *See State v. Alejandro Neave Vasquez and Nazario Araguz*, No. M2010-02538-CCA-R3-CD, 2012 WL 5989875, at *1 (Tenn. Crim. App. Nov. 28, 2012), *perm. app. denied* (Tenn. Mar. 20, 2013). The police

planned for an informant to ask for a kilogram of cocaine from a source but then return the cocaine to the source, claiming that it was impure, so that the police could follow the cocaine back to what they called a "stash house." *Id.* The police observed two Hispanic men arrive at the buy location in a Volkswagen Jetta, bring cocaine to the informant, and then leave the location with the cocaine. *Id.* at *1-2. The police followed the Jetta to an apartment complex and watched as the driver removed a dark-colored block from the trunk and placed it in a white bag. *Id.* at *3. The Jetta was driven to a gas station, where the driver removed the white bag from the Jetta and placed it in a Tahoe. *Id.* at *2-4. The Tahoe was driven by co-defendant Jose Aragus. *Id.* at *4. Aragus drove the Tahoe to a home on Strand Fleet Drive. *Id.* Thereafter, petitioner and co-defendant Alejandro Vasquez arrived at the Strand Fleet Drive house in a brown Ford F-150 with a license plate reading, "Araguz." *Id.* The police observed Vasquez carrying a white bag that he placed in the engine compartment of the F-150. *Id.* Petitioner and Vasquez then left Strand Fleet Drive with petitioner driving the F-150. *Id.* The police stopped petitioner and Vasquez on Richards Road after petitioner had driven past an elementary school. *Id.* at *2, *4-5. At a hearing on petitioner's motion to suppress, one of the police officers noted that he did not offer an interpreter to petitioner because he communicated sufficiently in English. *Id.* at *2. The police recovered a block of cocaine from the engine compartment of the truck, as well as approximately $123,000 from the interior of the truck. *Id.* Subsequently, petitioner was indicted, tried, and convicted of conspiracy to deliver 300 grams or more of cocaine in a drug-free school zone and possession with intent to deliver 300 grams or more of cocaine in a drug-free school zone. *Id.* at *1. Petitioner unsuccessfully appealed his convictions to this court. *Id.* at *8-14.

Petitioner filed his original petition for post-conviction relief on April 4, 2013. The post-conviction court appointed counsel, who filed an amended petition for relief on August 6, 2013.

At the post-conviction evidentiary hearing, trial counsel testified that his practice was ninety-nine percent criminal work. He said that prior to petitioner's trial, he had participated in approximately twenty felony jury trials. Trial counsel stated that petitioner's family retained him to represent petitioner. He recalled meeting with petitioner both in jail and at the courthouse. Trial counsel said that he reviewed the discovery materials with petitioner and explained his charges to him. He also explained his potential sentence exposure. Trial counsel testified that he did not have difficulty communicating with petitioner and stated that an interpreter was present "for much of the interaction." Regarding petitioner's right to testify at trial, trial counsel stated that he discussed with petitioner whether to testify and that they made the decision that he would not testify. Trial counsel said that he gave his opinion but that it was "ultimately" petitioner's decision. He testified, "I'm not aware of any mitigation or any advantage that his defense could have gained by him testifying."

On cross-examination, trial counsel agreed that the transcript of petitioner's trial indicated that petitioner twice told the court, "'I want to testify but I need an interpreter.'" Trial counsel recalled having an interpreter "[d]uring the trial process," but he said that he could not remember whether it was before or during the actual trial. He agreed that during the *Momon* hearing, petitioner indicated that he wanted to testify, that during a recess trial counsel advised him not to testify, and that thereafter petitioner waived his right to testify. In response to questioning from the post-conviction court, trial counsel recalled that petitioner indicated prior to trial that "an interpreter was not needed."

Petitioner testified that he understood "a little bit" of English. He agreed that he could have "uncomplicated simple conversations with people" but did not "understand legal terminology." Petitioner said that he wanted to testify at his trial but did not because trial counsel recommended that he not testify. Petitioner testified that he would have told the jury that the police could have stopped him before he drove through the school zone but they chose not to because "it was a trap." He said, in response to questioning from the court, that he did not have an interpreter for trial because his "lawyer told [him] that it wouldn't look good" to have an interpreter.

On cross-examination, petitioner testified that he told the truth at trial when he "said it was [his] decision not to testify." He clarified that he made the decision "because [his] lawyer told [him] it was best not to testify."

After taking the matter under advisement, the post-conviction court denied relief. It is from this judgment that petitioner now appeals.

## II. Analysis

Petitioner contends that he received ineffective assistance of counsel at trial because trial counsel failed to properly advise him about his right to testify.[1] The State responds that petitioner has failed to show deficient performance by trial counsel or that any alleged deficient performance prejudiced the outcome of his trial. We agree with the State.

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann.

---

[1] In his appellate brief, the petitioner asserts that he was forced to participate in his trial without the benefit of an interpreter and that trial counsel was ineffective for failing to present discovery materials to petitioner in his native language. However, these issues have been raised for the first time on appeal and are thus waived. *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996) (citing *State v. Burtis*, 664 S.W.2d 305, 310 (Tenn. Crim. App. 1983)).

§ 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was

called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

At the post-conviction hearing, both trial counsel and petitioner testified that counsel advised petitioner against testifying and that petitioner made the decision not to testify based on that advice. Petitioner testified that he told the truth at trial when he "said it was [his] decision not to testify." Furthermore, trial counsel said that he discussed petitioner's right to testify with him and that he was "not aware of any mitigation or any advantage that [petitioner's] defense could have gained by him testifying." Petitioner stated what his testimony at trial would have been and that testimony was solely about his being stopped in a school zone, not about the presence of a block of cocaine in his truck. Petitioner has not presented any evidence that he was actually coerced into waiving his right to testify — instead he merely states that he followed his attorney's advice. We agree with the trial court that petitioner did not prove that his trial counsel's performance was deficient or that he was prejudiced by that performance. Therefore, we affirm the post-conviction court's denial of relief.

## CONCLUSION

Based on the briefs of the parties, the record, and the applicable law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE